RACHEL WILSON, NVB #11884
1701 Whitney Mesa Dr., Suite 105
Henderson, NV  89014
Telephone:  (702) 997-2413
Fax:  (702) 452-3062
rachel@rachelwilsonlaw.com

**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

| | |
|---|---|
| Antonio Lagos and Arturo Carreño, individually and on behalf of other persons similarly situated,<br><br>　　　　Plaintiffs,<br>　　vs.<br><br>Monster Painting, Inc., Trevor Phillip Schaus and Brenda Lingle,<br><br>　　　　Defendants. | Case No. 2:11-cv-331-LRH-GWF<br><br>**FIRST AMENDED COMPLAINT; DEMAND FOR JURY TRIAL**<br><br>**(Collective Action/Class Action)** |

This amended complaint is submitted pursuant to Fed. R. Civ. Pro. Rule 15(b).

## I. INTRODUCTION

　　1.　　Plaintiffs Antonio Lagos and Arturo Carreño (hereinafter "Plaintiffs") bring this collective action to recover unpaid wages, overtime compensation, liquidated damages, attorneys' fees and costs under Section 216(b) of the Fair Labor Standards Act, 29 USC § 201 *et seq.*  Plaintiffs also bring this class action on behalf of themselves and on behalf of other similarly-situated employees to recover damages under the civil provisions of the Racketeer Influenced and Corrupt Organizations (RICO) Act, 18 U.S.C. §§ 1960-68, and under Nevada state law.

2.	Defendant Monster Painting, Inc. is a company that provides its customers various building services at construction projects.  These services include, but are not limited to, painting.

3.	Plaintiffs are current and former employees of Monster Painting, Inc. who have been deprived of their rightful pay through the intentional failure to pay wages, systematic under-reporting of hours, and failure to pay overtime for hours worked in excess of 40 in a week.  Furthermore, Plaintiffs have been systematically deprived of their rightful tax-reporting documents through a criminal scheme designed to skirt federal withholding and state workers' compensation laws.

4.	Plaintiffs have performed work for Defendant Monster Painting at locations including:  Green Valley Casino, Red Rock Casino, Santa Fe Casino, Aliante Casino, Orleans Casino, the gallery inside of Caesars Palace, the Sierra Health clinic and water pump stations for the City of Henderson. **See Exhibit A.**

5.	Plaintiffs regularly worked in excess of 40 hours a week.  **See Exhibits A-B, E.**

6.	Plaintiff Carreño kept contemporaneous records of his working hours.  They show that he was not paid for every hour he worked and that he was not paid an overtime premium for hours worked in excess of 40 in a week.  **See Exhibits A-B.**

7.	The failure to pay the overtime premium is clear on the face of the pay stub.  For example**, see Exhibit B**, where Plaintiff Carreño was paid a straight $15/hr. for working 55.75 hours the week of February 15-21, 2010 .

8.	Plaintiffs were paid with both personal checks and payroll checks and FICA deductions were taken out of both types of check.  See **Exhibits C, F.**

9.	However, the W-2 issued to the workers only included the amount of income paid with the payroll checks and not with the personal checks.  Furthermore, these W-2s did not include the FICA deductions that were made when workers were paid with personal checks.  See **Exhibits D, G.**

10.	For example, Plaintiff Lagos was paid a net total of $3,720.75 in 2010.  He knows this because of the record of checks cashed.  **Exhibit H.**  The check numbers listed in this record

match his pay stubs.  **Exhibit F.**  Nevertheless, his W-2 states that he only earned a net of $1,008.46.  **Exhibit G.**

11. Because the FICA deductions and withheld income from the personal checks did not show up as deductions on their W-2s, the Internal Revenue Service did not credit Plaintiffs' FICA payments or their withholdings.

12. Plaintiffs thus paid taxes as if these amounts had not been withheld, a substantially higher figure than if Defendants had truthfully reported their income and deductions to the Internal Revenue Service.

## II. JURISDICTION

13. This complaint alleges a cause of action under the Fair Labor Standards Act, 29 USC § 201 *et seq*. ("FLSA") and under 18 U.S.C. 1964 ("Civil RICO").  Accordingly, this court has jurisdiction pursuant to 28 USC § 1331.  This complaint also alleges causes of action under Nevada state law, which arise out of the same set of operative facts as the federal causes of action.  Accordingly, this court has supplemental jurisdiction over the state claims pursuant to 28 USC § 1367(a).

## III. VENUE

14. Venue lies within this District pursuant to 28 USC § 1391.  Venue is proper in the District of Nevada as the majority of the acts, events, and omissions giving rise to this action occurred in this District.  At all relevant times, Defendants employed Plaintiffs in the State of Nevada.

## IV. PARTIES

15. Plaintiffs are current and former employees of Monster Painting, Inc. who live and work in Clark County, Nevada.

16. Defendant Monster Painting, Inc. (hereinafter "Monster") is a Nevada Corporation.

17. Defendant Trevor Schaus is a contractor licensed by the Nevada State Contractors Board and the Director, President, Secretary and Treasurer of Monster Painting, Inc.

18. Defendant Brenda Lingle is a manager for Monster Painting, Inc. and oversees all payroll operations.

## V. CLASS ACTION ALLEGATIONS

19. All claims herein under Nevada state law are brought by Plaintiffs on behalf of themselves and all other similarly situated persons.

20. Class claims for injunctive and other equitable relief are brought pursuant to Fed. R. Civ. P. 23(a). For the purpose of injunctive and other equitable relief, the class consists of all persons who have been employed, are employed, or will be employed by Monster Painting, Inc. within the applicable limitations periods.

21. The precise number of individuals in the class is known only to Defendants. The class includes over 40 individuals. Joinder of all class members is impracticable.

22. There are questions of law and fact common to the class.

23. The claims of the Plaintiffs are typical of the claims of the class. The failure of the Defendants to comply with Federal and Nevada state law served to deprive all class members of the protections of these laws.

24. Plaintiffs will fairly and adequately protect the interests of the class.

25. Plaintiffs' counsel is experienced in conducting class actions.

26. The common claims set forth in the Second through Fifth Causes of Action predominate over any questions affecting only individual class members.

27. The Plaintiffs' interests in the claims set forth in the Second through Fifth Cause of Action are in no way antagonistic or adverse to those of other class members.

28. A class action under Fed. R. Civ. P. 23 is superior to other available methods of adjudicating the claims set forth in Counts 2-5 because, *inter alia*:

   a. Common issues of law and fact, as well as the relatively small claim of each class member, substantially diminish the interest of members of the class in individually controlling the prosecution of separate actions;

   b. Many of the class members are unaware of their rights to prosecute these claims and lack the means or resources to secure legal assistance;

c. There has been no litigation already commenced by members of the class to determine the questions presented; and

d. A class action can be managed without undue difficulty since Defendants have regularly committed the violations complained of herein and were required to maintain detailed records concerning each member of the class.

## VI. FACTUAL ALLEGATIONS

**A.    The FLSA Claims**

29. At all times relevant to this action, Defendant Monster Painting, Inc. has been an enterprise engaged in commerce or in the production of goods for commerce or has employees handling, selling, or otherwise working on goods or materials that have been moved in or produced for commerce within the meaning of Section 3(s) of the FLSA, 29 USC § 203(s). Specifically, employees handle paint produced by Sherwin-Williams, Glidden, and Behr, which has moved in interstate commerce.

30. At all times relevant to this action, Monster Painting, Inc. has had an annual gross volume of business of at least $500,000.

31. Monster Painting, Inc. has been or was, at all times relevant herein, Plaintiffs' employer within the meaning of Section 3(d) of the FLSA, 29 U.S.C. §203(d).

32. Defendant Trevor Schaus has been an individual engaged in commerce or in the production of goods for commerce within the meaning of the FLSA.

33. Defendant Brenda Lingle has been an individual engaged in commerce or in the production of goods for commerce within the meaning of the FLSA.

34. As an owner and officer who exerted operational control over Monster Painting, Inc., Defendant Trevor Schaus is a joint-employer of Plaintiffs within the meaning of the FLSA.

35. As a manager who exerted operational control over pay practices, Defendant Brenda Lingle is a joint-employer of Plaintiffs within the meaning of the FLSA.

36. Plaintiffs and others similarly situated were not paid for every hour worked.

37. Plaintiffs and others similarly situated regularly worked more than 40 hours per week for Defendants.

38. Plaintiffs and others similarly situated were not paid time and one-half for every hour worked over 40 hours per week.

39. Defendants' failure to pay Plaintiffs and others similarly situated the proper wages required by law was willful.

40. All actions and omissions described in this complaint were made by Defendants and/or Defendants' supervisory employees and/or agents.

**B.     The RICO Claim**

41. At all times relevant to this action, Defendants Monster Painting, Inc., Schaus, and Lingle are 'persons' as defined by RICO, 18 U.S.C. § 1961(3).

42. At all pertinent times, Defendant Monster Painting, Inc., Defendant Schaus, Defendant Lingle, non-Defendants Automatic Data Processing, Inc. and Bank of America and their agents formed an association-in-fact or other enterprise for the purpose of paying Plaintiffs and the class (the "Pay Enterprise"), which was an "enterprise" within the meaning of RICO, 18 USC § 1961(4).  This enterprise has the common purpose of compensating Monster Painting, Inc. employees for their work.

43. At all pertinent times, Monster Painting, Inc., Schaus and Lingle were engaged in, and their activities affected, interstate and foreign commerce within the meaning of RICO, through, for example, their purchase and use of paint from Sherwin-Williams, Glidden, and Behr.

44. Monster Painting, Inc., Schaus, and Lingle each associated with Automatic Data Processing and Bank of America and conspired and agreed to violate RICO, *i.e.,* agreed to conduct and/or participate in the conduct, directly or indirectly, of the affairs of the Pay Enterprise through a "pattern of racketeering activity" in violation of RICO. In particular, Monster Painting, Inc., Schaus, and Lingle agreed to commit two or more of the "predicate acts" of "racketeering activity."

45. The "racketeering activity" of Defendants Monster Painting, Inc., Schaus, and Lingle was and is comprised by multiple unlawful acts of Mail and Wire Fraud, Bank Fraud, Money Laundering**,** and otherwise conspiring, aiding, abetting and engaging therein. Defendants

Monster Painting, Inc., Schaus, and Lingle conspired, committed, aided and/or abetted at least two or more of these "predicate acts" of "racketeering activity" over the period of time that the Pay Enterprise has existed. Thus, Defendants Monster Painting, Inc., Schaus, and Lingle participated in the Pay Enterprise, whose legitimate purpose was to pay employees, for their illegitimate and criminal purpose of defrauding, injuring, depriving and profiting from systematic violations of the FLSA, the Federal Insurance Contributions Act (26 USC §§ 3101, *et seq.*), and Nevada state wage laws.

46. **Mail and Wire Fraud**. In order to advance, conceal, and further their racketeering activity in the Pay Enterprise, Defendants Monster Painting, Inc., Schaus, and Lingle made extensive use of the U.S. mail and wires, as prohibited by 18 U.S.C. §§ 1341, 1343 in the following ways: Monster Painting had two separate systems for paying employees, but only one system for generating W-2s. The use of these two sets of "books" is the source of the fraud alleged here. In the first set of "books," Monster Painting, Inc. issued paychecks through Automatic Data Processing's payroll program. The amounts reflected in these paychecks were then used by Automatic Data Processing to generate W-2s for every employee. However, Monster Painting also issued *personal* checks to its employees. The amounts reflected in these checks were never included on the employees' W-2s. Thus, although FICA deductions were made from each and every check, including both personal and payroll checks, employees were given W-2s that only reflected a portion of their income and FICA deductions.

47. This fraudulent scheme was carried out through the US mail and/or wires. For example, through fixed-line fax transmissions, telephone lines and other wires, and the U.S. mail, Trevor Schaus and Brenda Lingle, as managers for Monster Painting, Inc. communicated falsified payroll information to Automatic Data Processing, Inc., a Delaware corporation. One specific instance occurred on or about July 11, 2010, when Defendants used the US mail and/or wires to tell Automatic Data Processing, Inc., that Antonio Lagos had worked 22.25 hours during the week of July 5-11, 2010, and that his year-to-date FICA deductions were $83.54. This was untrue and Defendants knew it to be untrue. In fact, Lagos had worked more hours and his year-to-date FICA total was higher. This fraud injured Lagos because his paycheck was lower than it

should have been; he should have been paid for every hour of work). This fraud also injured Lagos because he was deprived of a truthful W-2 and truthful reporting of his FICA deductions to the IRS. This is just one example among thousands of instances.

48. **Bank Fraud.** Defendants Monster Painting, Inc., Schaus, and Lingle knowingly and intentionally executed a scheme or artifice to obtain monies under the custody or control of a financial institution by means of false or fraudulent pretenses and representations in violation of 18 U.S.C. § 1344(2). By generating "off-the-books" paychecks on their Bank of America account, Defendants Monster Painting, Inc., Schaus, and Lingle executed a fraudulent scheme to pay employees, thereby obtaining money under the control of Bank of America by means of a fraudulent pretense. One specific instance occurred on or about July 18, 2010, when Defendants generated a check for Antonio Lagos by using the US mail and/or wires to tell Bank of America that Antonio Lagos had earned $523.25 and that Monster was deducting $40.03 from his paycheck for FICA. This was untrue and Defendants knew it to be untrue. In fact, Lagos had earned, but was not paid, more money and the money deducted for FICA was never paid over to the IRS. This fraud injured Lagos because, under the guise of deducting for FICA, Monster simply stole money from his paycheck. This is just one example among thousands of instances.

49. **Money Laundering.** Defendants Monster Painting, Inc., Schaus, and Lingle routinely laundered money proceeds of criminal acts in interstate commerce, *i.e.,* knowingly conducted financial transactions involving the money proceeds of defrauding and depriving Plaintiffs of documentation required under 26 USC § 3402 and 26 CFR §31.6051.1, their compensation guaranteed by the FLSA and state wage laws to promote the carrying on of that unlawful activity, in furtherance of their conspiracy about, conduct of, and other participation in the Pay Enterprise. This was in violation of 18 U.S.C. § 1956. Specifically, Monster Painting, Schaus and Lingle kept the balance of the Bank of America account artificially high through the systematic underpayment of wages to employees, payroll taxes to the Federal Government, and premiums to workers compensation insurers by keeping two sets of books, as described above. Money from that account then went to pay for other business expenses, such as paint from Sherwin-Williams, Glidden, and Behr. By this scheme, Defendants Monster Painting, Inc.,

Schaus, and Lingle laundered dirty money (the unpaid wages, payroll taxes and workers' compensation premiums) into clean by funneling it through the Bank of America account to others, including suppliers of paint.

### C. The Nevada State Law Claims

50. Defendant Monster Painting, Inc., has been or was, at all times relevant herein, Plaintiffs' employer within the meaning of NRS § 608.011.

51. Defendant Monster Painting, Inc. has failed to pay Plaintiffs time-and-a-half of their regular wage for all hours worked in excess of forty in a workweek. .

52. Defendant Monster Painting, Inc. has also failed to pay Plaintiffs for every hour they worked.

**FIRST CLAIM FOR RELIEF**
**FAILURE TO PAY OVERTIME**
**[FLSA, 29 USC § 207]**
**BY ALL PLAINTIFFS AGAINST ALL DEFENDANTS**
**(COLLECTIVE ACTION)**

53. Plaintiffs re-allege and incorporate by reference the allegations listed above as if fully set forth here.

54. Plaintiffs bring their First Claim for Relief as an opt-in collective action under the FLSA, 29 USC § 216(b), for unpaid overtime wages, liquidated damages, attorneys' fees, and costs. Plaintiffs have been denied proper compensation during the applicable liability period. Plaintiffs represent the other employees who were similarly denied proper compensation, and act on behalf of those employees' interests and their own, in bringing this action. Each named plaintiff has signed a retainer agreement with counsel to become a party in this action. The employees similarly situated to Plaintiffs are known to Defendants, are readily identifiable, and may be located through Defendants' records. These similarly-situated employees should be notified of, and allowed to opt into, this action to pursue their claims for for unpaid overtime wages, liquidated damages, attorneys' fees, and costs. under the FLSA.

55. Section 7 of the FLSA, 29 U.S.C. §207, establishes the right of all persons who are "suffered or permitted to work" to have their employer pay the correct overtime rate for all hours worked in excess of forty hours in a workweek.

56. Plaintiffs are informed and believe, and thereupon allege, the following acts herein: that Defendants have engaged in a pattern and practice of violating the Fair Labor Standards Act by requiring Plaintiffs and the class to work in excess of forty hours in a workweek without paying them overtime at the time-and-a-half rate required by the FLSA and that such conduct was willful within the meaning of 29 U.S.C. §255(a).

57. As a result of the unlawful acts of Defendants, Plaintiffs and others similarly situated have been deprived of overtime pay in amounts to be determined at trial and are entitled to recovery of such amounts, liquidated damages, attorneys' fees, and other compensation pursuant to 29 USC § 216(b). Plaintiffs and other persons formally or informally employed by Defendants who may opt in to this collective action request relief as described below.

**SECOND CLAIM FOR RELIEF**
**RACKETEER INFLUENCED AND CORRUPT ORGANIZATIONS ACT (RICO)**
**[18 U.S.C. §§ 1960-68]**
**BY ALL PLAINTIFFS AGAINST ALL DEFENDANTS**
**(CLASS ACTION)**

58. Plaintiffs re-allege and incorporate by reference the allegations listed above as if fully set forth here.

59. As a direct, intended, and foreseeable result of Defendants' Monster Painting, Inc., Schaus, and Lingle violations of RICO, Plaintiffs have suffered injury to their property, in the form of underpayment of wages, lack of workers' compensation insurance, lack of truthful tax-reporting documents, and wrongful increased tax liability.

60. The criminal acts of mail and wire fraud, bank fraud, and money laundering committed by Defendants Monster Painting, Inc., Schaus, and Lingle caused the above-described injuries to Plaintiffs.

61. Plaintiffs and the class are entitled to relief including their actual damages, treble damages, attorney's fees pursuant to 18 U.S.C. § 1962(c) and costs.

# THIRD CLAIM FOR RELIEF
## CLASS ACTION TO RECOVER UNPAID OVERTIME
### [NEV. REV. STAT. § 608.018]
### BY ALL PLAINTIFFS AGAINST MONSTER PAINTING, INC.
### (CLASS ACTION)

62. Plaintiffs re-allege and incorporate by reference the allegations listed above as if fully set forth here.

63. Plaintiffs bring this Third Claim for Relief as an opt-out class action under Nevada Rule of Civil Procedure 23(a) on behalf of themselves and the proposed class of current and former employees of Defendants Monster Painting, Inc., who, within the applicable liability period, were not paid overtime.

64. Defendants have required employees to work more than 40 hours in a week but have not paid them time-and-a-half for the hours worked in excess of 40, as required by N.R.S. § 608.018.

# FOURTH CLAIM FOR RELIEF
## ACTION TO RECOVER WAITING-TIME PENALTIES UNDER NEVADA LAW
### [NRS 608.040(1), NRS 608.050]
### BY ALL PLAINTIFFS AGAINST MONSTER PAINTING, INC.
### (CLASS ACTION)

65. Plaintiffs re-allege and incorporate by reference the allegations listed above as if fully set forth here.

66. Plaintiffs bring this claim on behalf of a subclass consisting of all the former employees of Monster Painting, Inc.

67. NRS 608.040(1) provides:
> If an employer fails to pay:
> (a) Within 3 days after the wages or compensation of a discharged employee becomes due; or
> (b) On the day the wages or compensation is due to an employee who resigns or quits,
> the wages or compensation of the employee continues at the same rate from the day he resigned, quit or was discharged until paid or for 30 days, whichever is less.

68. NRS 608.050 provides:

> 1. Whenever an employer of labor shall discharge or lay off his or its employees without first paying them the amount of any wages or salary then due them, in cash and lawful money of the United States, or its equivalent, or shall fail, or refuse on demand, to pay them in like money, or its equivalent, the amount of any wages or salary at the time the same becomes due and owing to them under their contract of employment, whether employed by the hour, day, week or month, each of his or its employees may charge and collect wages in the sum agreed upon in the contract of employment for each day his employer is in default, until he is paid in full, without rendering any service therefor; but he shall cease to draw such wages or salary 30 days after such default.
> 2. Every employee shall have a lien as provided in NRS 108.221 to 108.246, inclusive, and all other rights and remedies for the protection and enforcement of such salary or wages as he would have been entitled to had he rendered services therefor in the manner as last employed.

69. The former employees subclass provided labor to Monster but have not been provided all wages (including overtime) due them within the time periods required by Nevada law and accordingly are owed waiting time penalties under NRS 608.040 and/or NRS 608.050.

**FIFTH CLAIM FOR RELIEF**
**BREACH OF CONTRACT/QUASI-CONTRACT**
**BY ALL PLAINTIFFS AGAINST MONSTER PAINTING, INC.**
**(CLASS ACTION)**

70. Plaintiffs re-allege and incorporate by reference the allegations listed above as if fully set forth here.

71. Plaintiffs bring this claim on behalf of themselves and on behalf of a class of similarly-situated workers employed by Defendant Monster.

72. When Plaintiffs were paid through the payroll service, each check stub listed an hourly rate of pay. The printing of this rate on the pay stubs constituted a promise to pay at least that wage for every hour worked.

73. Had Defendants decided to lower the pay rate, they would have had to give written notice under Nev. Rev. Stat. § 608.100.

74. Plaintiffs never received any notice that the pay rate was being lowered.

75. Nevertheless, Plaintiffs worked hours for which they were not paid at all, which is a pay rate of $0.

76. Therefore, Defendant Monster Painting, Inc. breached its employment contracts with Plaintiffs, entitling them to damages. In the absence a formal contract, Monster Painting, Inc. breached its quasi-contracts with Plaintiffs, entitling them to equitable relief.

## VII. PRAYER FOR RELIEF

WHEREFORE, Plaintiffs on their own behalf and on behalf of all members of the FLSA collective action pray for relief as follows:

A. Designation of this action as a collective action on behalf of the FLSA Collective Plaintiffs (asserting FLSA claims) and prompt issuance of notice pursuant to 29 USC § 216(b) to all similarly-situated members of the FLSA opt-in Collective, apprising them of the pendency of this action, and permitting them to assert timely FLSA claims in this action by filing individual Consent to Sue forms pursuant to 29 USC § 216(b) and tolling the statute of limitations on the claims of all members of the FLSA Opt-In Class from the date this complaint was filed until the class members are provided with reasonable notice of the pendency of this action and a fair opportunity to exercise their right to opt in as plaintiffs;

B. An order requiring Defendants to disclose in computer readable format, or in print if no computer readable format is available, the names and addresses of all those individuals who are similarly situated, and permitting Plaintiffs to send notice of this action to all those similarly-situated individuals;

C. Designation of Plaintiffs as Representatives of the FLSA Collective;

D. A declaratory judgment that the practices complained of herein are unlawful under the FLSA;

E. A declaratory judgment that Defendants Monster Painting, Inc., Schaus and Lingle willfully violated the Fair Labor Standards Act;

F. A judgment in favor of Plaintiffs and the FLSA Collective Plaintiffs and against Defendants Monster Painting, Inc., Schaus and Lingle on the Plaintiffs' Fair Labor Standards Act claims and awarding each of them the amount of his/her unpaid wages and overtime wages, along with an equal amount as liquidated damages, the costs of this action, reasonable attorney's fees with regard to their claims under the Fair Labor Standards Act, and pre- and post-judgment interest, as provided by law; and

G. Grant such other and further legal and equitable relief as this Court may deem just and proper.

WHEREFORE, Plaintiffs on their own behalf and on behalf of all members of the RICO and State Class pray for relief as follows:

A. Certification of this action as an opt-out class action on behalf of the class;

B. Designation of Plaintiffs as representatives of the class;

C.  Designation of Plaintiffs' counsel as Counsel for the class;

D.  A judgment in favor of Plaintiffs and against Defendants on the RICO claim and awarding them treble damages and attorney's fees and costs pursuant to 18 U.S.C. § 1964(c).

E.  A declaratory judgment that Defendant Monster Painting, Inc. failed to pay proper overtime.

F.  A judgment in favor of Plaintiffs and the State Class and against Defendant Monster Painting, Inc. and awarding them the promised wages for every hour worked, the overtime pay due under N.R.S. § 608.018, pre-judgment and post-judgment interest, waiting-time penalties and attorneys' fees pursuant to N.R.S. § 608.140;

G.  An order requiring Monster Painting, Inc. to generate accurate W-2s for all members of the class for the relevant period;

H.  An injunction against Monster and its officers, agents, successors, employees, representatives, and any and all persons acting in concert with them, as provided by law, from engaging in each of the unlawful practices and policies set forth herein;

I.  Grant such other and further legal and equitable relief as this Court may deem just and proper.

## VIII. DEMAND FOR JURY TRIAL

Plaintiffs hereby demand a jury trial on all causes of action and claims with respect to which they have a right to jury trial.

RESPECTFULLY SUBMITTED this 7th day of April, 2011.

By_____/s/_____
　　Rachel Wilson
　　Attorney for Plaintiffs

**CERTIFICATE OF SERVICE**

I hereby certify that on the 7th day of April 2011, I electronically transmitted the attached document to the Clerk's Office using the CM/ECF system for filing and transmittal to the following CM/ECF registrants:

Eric Dobberstein
8965 S. Eastern Ave., Suite 280
Las Vegas, NV  89123


/s/_____
Rachel Wilson