RACHEL WILSON, SBN 11884
1701 Whitney Mesa Dr., Suite 105
Henderson, NV  89014
phone:  (702) 997-2413
fax:  (702)  543-3789
rachel@rachelwilsonlaw.com

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEVADA

| | |
|---|---|
| Antonio Lagos and Arturo Carreño, individually and on behalf of other persons similarly situated,<br><br>　　　　　Plaintiffs,<br><br>　vs.<br><br>Monster Painting, Inc., Trevor Phillip Schaus and Brenda Lingle,<br><br>　　　　　Defendants. | Case No. 2:11-cv-331-LRH-GWF<br><br><br>**SECOND MOTION FOR COLLECTIVE ACTION CERTIFICATION AND COURT-SUPERVISED NOTICE OF PENDING COLLECTIVE ACTION**<br><br>**HONORABLE LARRY R. HICKS** |

The Plaintiffs, Antonio Lagos and Arturo Carreño,  (hereinafter "Plaintiffs"), by and through their counsel, hereby file this Second Motion for Collective Action Certification and Court-Supervised Notice of Pending Collective Action.  Plaintiffs' Motion is supported by the following Memorandum of Points and Authorities, exhibits, and oral arguments as may be permitted by the Court.

## MEMORANDUM OF POINTS AND AUTHORITIES

### INTRODUCTION

On behalf of themselves and others similarly situated, Plaintiffs filed a Second Amended Complaint on May 7, 2012 alleging violations of the Fair Labor Standards Act, 29 U.S.C. § 201 et seq., and the Racketeer Influenced and Corrupt Organizations (RICO) Act, 18 U.S.C. §§ 1960-68.  The Plaintiffs allege that they and others similarly situated were not paid the proper overtime wage for their work for the Defendants and were not properly compensated for every hour they worked. See Second Amended Complaint ("SAC") ¶¶ 1-10.  They believe that Monster had a policy of not recording hours worked and not paying overtime premiums.

The Plaintiffs in this action now move this Court for an order conditionally certifying the collective action and for notice to be given to all Monster workers who failed to receive the statutory time-and-a-half overtime wage.   Under *Hoffmann-La Roche, Inc. v. Sperling*, 493 U.S. 165 (1989), this Court has the discretion and the responsibility to order such notice where it is necessary to inform similarly situated employees of their entitlement to participate in this FLSA case.  This discretion is regularly exercised to ensure that the "purposes and putative benefits of a collective action under § 216 are served." *Reab v. Electronic Arts, Inc.,*214 F.R.D. 623, 627 (D. Colo. 2002).  Those purposes are lowering the individual costs for employees to vindicate rights and judicial efficiency.  *Hoffmann-La Roche*, 493 U.S. at 165.  These purposes cannot be served unless all potentially affected employees receive "accurate and timely notice concerning the pendency of the collective action.  *Id*. at 170.

### ARGUMENT

**A.**   ***Hoffmann-La Roche* Sets Forth The FLSA Notice And Opt-In Procedure**

Plaintiffs' Second Amended Complaint ("SAC") alleges that Monster failed to pay its employees time-and-a-half overtime in violation of the FLSA. FAC, ¶¶ 5-10. The FLSA expressly authorizes workers to sue for unpaid overtime wages on behalf of themselves and all "other employees similarly situated." 29 U.S.C. § 216(b).

Unlike a class action under Rule 23 of the Federal Rules of Civil Procedure, in which individuals are members of a class until they affirmatively "opt out," each individual member (or "party plaintiff") of a collective action under the FLSA must affirmatively "opt in" by filing a written consent form with the court. Absent equitable or contractual tolling, the statute of limitations continues to run on each individual's claim until he or she files his or her consent form with the court. *Id*. at §§ 216(b), 256(b). Generally, courts granting a *Hoffmann-La Roche* motion will set a fixed "cut-off" date after which no new individual plaintiffs can assert FLSA claims in the existing action. *Hoffmann-La Roche*, 493 U.S. at 172.

Because the substantial benefits of FLSA collective actions "depend on employees receiving accurate and timely notice concerning the pendency of the collective action," the FLSA grants courts procedural management authority, including the power to authorize notice and

monitor preparation and distribution of the notice. *Hoffmann-La Roche*, 493 U.S. At 169-72.[1]

"Court authorization of notice serves the legitimate goal of avoiding a multiplicity of duplicative suits and setting cutoff dates to expedite disposition of the action." *Id*. at 172. This approach allows the "efficient resolution in one proceeding of common issues of law and fact," and provides plaintiffs with the opportunity to "lower individual costs to vindicate rights by the pooling of resources." *Id.* at 170. "The judicial system benefits by efficient resolution in one proceeding of common issues of law and fact arising from the same alleged . . . [unlawful] activity." *Id*. at 170.

The twin goals of judicial efficiency and eradication of unlawful overtime practices are best served by a procedure that advises individuals of their rights, tolls the statute of limitations on their claims, and provides a reasonable period of time for them to decide whether to join the existing lawsuit. Well-designed notice calculated to reach as many potential class members as possible and to clearly explain their rights maximizes the number of potential claims that can be resolved at one time. Thus, the inefficiency and inconsistency of redundant proceedings in multiple forums are avoided. Simultaneously, the substantive rights established by the FLSA are most effectively vindicated, fulfilling the Supreme Court's mandate that "[t]he broad remedial goal of the [FLSA] should be enforced to the full extent of its terms." *Id.* At 173.

**B.      Plaintiffs' motion should be evaluated under the first-stage *Lusardi* standard.**

There are two steps in collective action certification under the FLSA. *Lusardi v. Xerox Corp.*, 118 F.R.D. 351 (D.N.J. 1987);  *Hipp v. Liberty National Life Ins. Co.,* 252 F.3d 1208, 1219 (11th Cir. 2001); *Thiessen v. Gen. Elec. Capital Corp.*, 267 F.3d 1095, 1102-03 (10th Cir. 2001).  Step one is known as the "notice stage." At that step (the step at issue in this Motion), the Court employs a lenient standard to ensure that the plaintiffs' allegations and modest evidentiary showing warrant the inference that other similarly-situated employees exist and may want to opt in.  At the conclusion of discovery, the district court may make a second stage determination, if

---

[1]      *Hoffmann-La Roche* arose under the Age Discrimination in Employment Act ("ADEA"). Because the ADEA expressly incorporates the FLSA's enforcement provisions and is therefore also an opt-in statute, courts may look to ADEA collective action cases for standards regarding the interpretation and application of Section 216 the FLSA. *See, e.g.*, *Shaffer v. Farm Fresh, Inc.*, 966 F.2d 142, 147 n.5 (4th Cir. 1992) ("[S]ince the ADEA incorporates § 16(b) of the FLSA into its enforcement scheme, the same rules govern judicial management of class

requested by the defendant, concerning whether all opt-in plaintiffs' claims should be tried in a single proceeding. *Thiessen*, 267 F.3d at 1102-03; *Brown*, 222 F.R.D. at 679.

Little discovery has taken place in this case, despite the time that has elapsed. Discovery began on June 7, 2011. However, Plaintiffs and Defendants soon became engaged in lengthy discovery disputes, culminating in Plaintiffs' Motion to Compel. Dkt. #27. At the December 20, 2011 hearing on the motion, Magistrate Judge Foley granted Plaintiffs' motion:

> ORDERED that the motion to compel [27] is GRANTED. The defendant, Mr. Shaus, that has in his possession/custody/control is ORDERED to produce and or supplement the responses to these subject requests for production within 1 week from today and produce documents that fall within the scope of those requests at issue, subject to plaintiff's counsel providing defense counsel, today, with approximate dates the named plaintiffs were employed by Monster Painting, Inc.. FURTHER ORDERED that the supplemental motion to compel [30] requiring defendants to appear for properly noticed depositions is GRANTED. The oral request by Ms. Wilson for an extension of deadline to file dispositive motions is GRANTED and will be set if needed after the District Judge rules on motions to dismiss [8] & [11] and motion to certify class [22]. Dkt. #33, text of order.

Nine days later, this Court granted, in large part, Defendants' motion to dismiss. Dkt. #34. Plaintiffs believe that Defendants never fully complied with the Court's order; but, until the issue of the complaint was resolved, Plaintiffs could not properly assert their right to the requested information. Furthermore, by this time Monster Painting had filed for bankruptcy and its records were transferred to the bankruptcy trustee. Since this Court's May 4, 2012 order restoring the majority of Plaintiffs' claims, Plaintiffs have now initiated the process of requesting records through the bankruptcy proceeding, but the documents have not yet been produced.

Therefore, the evidence available to Plaintiffs at this time is minimal. Because of this, it is appropriate to use the first-stage standard outlined in *Lusardi*. Although the Ninth Circuit has not provided specific interpretation of what it means to be similarly situated, *Reed v. County of Orange*, 266 F.R.D. 446, 449 (C.D. Cal. 2010) ("The FLSA does not define the term 'similarly situated, ' and there is no Ninth Circuit precedent interpreting the term."), nevertheless "[t]he standard for certification at this stage is a lenient one that typically results in certification." *Gerlach v. Wells Fargo & Co.*, Case No. C 05-0585 CW, 2006 WL 824652, at *2 (N.D. Cal.

Mar. 28, 2006) (Wilken, J.) (granting conditional certification) (citing *Wynn v. National Broadcasting Company, Inc.*, 234 F.Supp.2d 1067, 1082 (C.D. Cal. 2002)) Accord, *Romero v. Producers Dairy Foods, Inc.*, 235 F.R.D. 474, 482 (E.D. Cal. 2006) ("The decision is made under a 'fairly lenient standard' and the usual result is conditional class certification.") (citing *Leuthold v. Destination Am., Inc.*, 224 F.R.D. 462, 467 (N.D. Cal. 2004) (Walker, J.) (granting conditional certification)); *Church v. Consolidated Freightways, Inc.*, 137 F.R.D. 294, 298 (N.D. Cal. 1991) (Jensen, J.) (finding notice appropriate even though class members were employed at 112 different locations in 74 different jobs).

This standard is considerably lower than the standard for certification of a Rule 23 class. As Justice Scalia recently articulated in *Wal-Mart Stores, Inc., v. Dukes, et al.,* 564 U.S. ___ (2011), "Rule 23 does not set forth a mere pleading standard. A party seeking class certification must affirmatively demonstrate his compliance with the Rule—that is, he must be prepared to prove that there are *in fact* sufficiently numerous parties, common questions of law or fact, etc." *Id*. at 10.  This is because class certification in a Rule 23 case is unconditional.  In contrast, FLSA collective action certification is merely for the purpose of issuing notice, thus allowing individuals to join one case in the interests of avoiding duplicative litigation and judicial economy.  It is simply a tool of litigation management.  Consequently, courts have held that FLSA conditional certification is appropriate based on "nothing more than substantial allegations that the putative class members were together the victims of a single decision, policy, or plan." *Thiessen*, 267 F.3d at 1102 (internal quotations and citations omitted); *Bonilla v. Las Vegas Cigar Co.*, 61 F. Supp. 2d 1129, 1139 n.6 (D. Nev. 1999) (requiring "some factual nexus which binds the named plaintiffs and the potential class members together as victims of a particular alleged [policy or practice]"). Another court has described the standard as requiring only "detailed allegations supported by affidavits which 'successfully engage defendants' affidavits to the contrary.'" *Romero v. Producers Dairy Foods, Inc.*, 235 F.R.D. 474, 482 (E.D. Cal. 2006) (quoting *Grayson v. K Mart Corp.*, 79 F.3d 1086, 1096 (11th Cir. 1996)).

If a court finds that this standard is met, it conditionally certifies the case as a collective action and orders dissemination of notice to the class members, allowing them an opportunity to affirmatively opt in by filing Consent to Join forms. *Wynn*, 234 F. Supp. 2d at 1082; *Garner v. G. D. Searle Pharmaceuticals & Co.*, 802 F. Supp. 418, 423 n.4 (M.D. Ala. 1991) ("A primary purpose of notification is to locate other similarly-situated employees who may wish to bring their claims to the court's attention *before* this litigation is resolved.") (emphasis in original). The case proceeds as a representative action throughout the course of discovery.[2] If the Court determines that individual issues predominate, the Court can sever the claims.  This gives Defendants relief from trying the case as a collective when a more complete record suggests that such treatment is improper.  This relief, coupled with the fact that Plaintiffs bear the costs for issuing the notice, makes conditional collective action certification amply fair to Defendants.

C.      **Conditional Certification And Issuance Of Plaintiffs' Proposed Notice Is Appropriate In This Case**

Plaintiffs' allegations and evidentiary showing readily satisfy the first stage standard, and likely satisfy the second-stage standard as well.  Based on the attached declarations, payroll documents, and check stubs, a clear factual nexus exists that binds the named Plaintiffs and the potential class members together as victims of a particular alleged policy or practice.  *Bonilla v. Las Vegas Cigar Co.,* 51 F.Supp.2d 1129, 1139 n.6 (D.Nev. 1999).   The policy is this:  Monster does not pay overtime premiums, even though it clearly knew that overtime was worked, as evidenced by its own payroll records.

Under the FLSA, the mere toleration of overtime work is enough to trigger liability.  As explained in *Forrester v. Roth's I.G.A. Foodliner, Inc.,* 646 F.2d 413, 414 (9th Cir. 1981), "[A]n employer who knows or should have known that an employee is or was working overtime must comply with the provisions of § 207 [mandating overtime pay]. An employer who is armed with this knowledge cannot stand idly by and allow an employee to perform overtime work without proper compensation, even if the employee does not make a claim for the overtime

---

2       As with class certification under Rule 23, conditional certification does not require any adjudication of the merits of plaintiffs' claims. *Thiessen*, 267 F.3d at 1106-07; *Garner*, 802 F. Supp. at 422-23.

compensation." *Id*. at 414.  Indeed, "[a]n employer who has knowledge that an employee is working, and who does not desire the work be done, has a duty to make every effort to prevent its performance." *Reich v. Stewart*, 121 F.3d 400, 407 (8th Cir.1997).  This duty arises even where the employer has not requested the overtime be performed or does not desire the employee to work, or where the employee fails to report his overtime hours. *See Kosakow v. New Rochelle Radiology Assocs.*, 274 F.3d 706, 718 (2d Cir.2001); *Holzapfel v. Town of Newburgh, NY*, 145 F.3d 516, 524 (2nd Cir. 1998); 29 C.F.R. §§785.11-12.  The regulations interpreting the Act are particularly instructive:  "In all such cases it is the duty of the management to exercise its control and see that the work is not performed if it does not want it to be performed.  The mere promulgation of a rule against such work is not enough.  Management has the power to enforce the rule and must make every effort to do so." 29 C.F.R. §785.13.  Here, Monster not only tolerated the overtime, it openly acknowledged it in its own payroll records.

Monster's overtime policy is clear, despite the paucity of documents produced in discovery.  First, Defendants' Initial Disclosures included approximately one year of payroll records covering at least a portion of its workforce from 12/28/09 to 12/26/10.   These records show that Plaintiffs were not alone in working over 40 hours a week.  Other painters who also worked over 40 hours include Juan Ayala, Efren Bautista, Ramon Bautista, Benjamin Cafaro, Carlos Robledos, and Gonzalo Sierra.  **Ex. A**.  Thus, Monster has recorded overtime work for at least eight people during 2010 alone.  This figure does not even include employees who worked more hours than were recorded on Monster's payroll records.  Furthermore, Lupita Uribe and Rosa Rodriguez, both former Monster employees, have filed "Consent to Join" forms with the Court, showing that there is interest among other former employees to pursue their claims.  Dkts. #21, #26.

Defendants' failure to pay overtime premiums is also clear on the face of Plaintiffs' paycheck stubs.  Note the seven pay stubs included in **Exhibit B**.  Each of these pay stubs states that Plaintiff Carreño worked more than 40 hours per week.  However, Monster paid him a straight hourly wage for all of these hours, including those worked in excess of 40.  For example, on January 28, 2011, Mr. Carreño received a paycheck for work performed from January 7

through January 13.  The stub states that he worked 45.25 hours during that week.  He was paid $15/hr. for the 45.25 hours, totaling $678.75.  **Ex. B, Bates 00144.**  However, he should have been paid time and a half for all hours worked over 40.  Thus, Defendants shorted him $7.50 for the 5.25 hours, resulting in an underpayment of $39.38 for that week alone.

This practice has apparently been going on for some time at Monster.  Plaintiffs obtained a copy of a paycheck stub for Carlos Robledo from early 2009, when Monster was using a different payroll management company.  On this stub, it states that Mr. Robledo worked 60.95 hours and was paid $15 an hour for the first 60.45 hours.  Then, Mr. Robledo was paid half an hour of overtime at $22.00, although the proper overtime rate was $22.50.  Thus, while Mr. Robledo should have received $1,060.13 that week, he only received $918.00, a difference of $142.13.  **Ex. C.**

All non-salaried workers at Monster suffered under the same illegal policy:  the policy of not paying overtime premiums, no matter how many hours were worked.  Again, to satisfy the similarly situated requirement, Plaintiffs "need only show that their positions are similar, not identical, to the positions held by the putative class members."  *Hipp*, 252 F.3d at 1217.  Plaintiffs have met and even surpassed this requirement.

Therefore, this Court should conditionally certify the requested class for treatment as a collective action under the FLSA.  Furthermore, notice and Consent to Join forms should be mailed to all individuals who worked for Monster at any time during the relevant time period.[3]

Plaintiffs request that notice be provided to all putative class members, defined as:

> All non-salaried workers who performed work for
> Monster for the time period from March 2, 2008 to
> the present.

**D.      The Statute of Limitations Should Be Equitably Tolled**

Under the FLSA, the statute of limitations for each individual party plaintiff is not tolled until he or she files written consent to join the action.  29 U.S.C. § 256(b).  However, courts have

---

[3]      Plaintiffs request application of a three-year statute of limitations based on Plaintiffs' allegation that Monster's conduct constitutes a "willful" violation of the FLSA, with such "willfulness" increasing the statute of limitations from two years to three. 29 U.S.C. §255(a). Ultimately, on the merits, the test for whether a violation is willful will be whether Monster "knew or showed reckless disregard for the matter of whether its conduct was prohibited by the [FLSA]." *Chao v. A-One Med. Servs.*, 346 F.3d 908, 918 (9th Cir. 2003).

discretion to equitably toll the limitations period in appropriate cases in order "to avoid inequitable circumstances." *Yahraes v. Restaurant Assocs. Events Corp.*, 2011 WL 844963, at *1 (E.D.N.Y. Mar.8, 2011). The court there noted that "the delay caused by the time required for a court to rule on a motion, such as one for certification of a collective action in a FLSA case, may be deemed an 'extraordinary circumstance' justifying application of the equitable tolling doctrine." Id. at *2 (collecting cases). While plaintiffs wishing to pursue their rights cannot sit on them indefinitely, those whose putative class representatives and their counsel are diligently and timely pursuing the claims should also not be penalized due to the courts' heavy dockets and understandable delays in rulings.  Accordingly, Plaintiffs request that tolling begin from August 4, 2011, the date this motion was originally filed, through the date of the Court-set deadline for receipt of Consents to Join.

        **E.**        **Plaintiffs' proposed notice is the best notice practicable to this class**

                **1.**        **Plaintiffs' proposed notice clearly communicates the rights at stake in this litigation and class members' options**

Plaintiffs propose a neutral and straightforward form of notice, which will inform prospective Plaintiffs of their statutory opt-in rights.  Proposed Order Granting Plaintiffs' Motion For Approval Of *Hoffmann-La Roche* Notice, **Ex. D.** The proposed notice explains the nature of the action, Plaintiffs' allegations, and makes it clear that the Court has not adjudicated the merits of the dispute.  The notice provides Plaintiffs' counsel's contact information, so that potential plaintiffs can speak with the attorney whom they would be designating to represent them should they choose to opt in. Lastly, the notice summarizes potential plaintiffs' options.  It also warns that those parties who do opt in will be bound by the resulting judgment, whether favorable or unfavorable. The notice attaches the same Consent to Join form that Plaintiffs have used already to opt into the lawsuit.

                **2.**        **Individual mailing, coupled with posting of the notice at Plan B Paint and Drywall, will ensure that notice more effectively reaches class members to inform them of their options.**

In addition to the individually mailed notice, posting of the notice at class members' work location will help ensure that the Court-ordered notice will be effective in reaching prospective Plaintiffs and informing them of their rights.  Since Monster Painting's filing of bankruptcy in November, 2011, Defendants Schaus and Lingle have been operating a different painting business, Plan B Paint and Drywall.  See **Ex. E.,** a screenshot of Plan B's website at http://www.lasvegaspaintingcontractor.org/service_detail_template.html.  Oddly, the website states that Plan B was founded in May, 2006, but Plan B was not incorporated until 2009.  **Ex. F.**.  It is likely that at least some of Monster's former employees are now employed at Plan B Paint and Drywall.

Posting is inexpensive. Furthermore, it promotes the communication of the Court's message to class members by taking a careful real-world approach to effectuating notice. Therefore, Plaintiffs propose that Schaus and Lingle prominently post notice in the class members' places of work.  Courts regularly order such posting of notice. For example, in *Romero v. Producers Dairy Foods, Inc.*, 235 F.R.D. 474 (E.D. Cal. 2006), the court required posting of the *Hoffmann-La Roche* notice in the class members' workplaces, finding that that requirement would impose "only a small burden," and, combined with first-class mail notice, would "provide[] the 'best notice practicable' to the potential class." *Id.* at 493 (citing *Oppenheimer Fund v. Sanders*, 437 U.S. 340, 359 (1978)). The court noted that "[m]ultiple district courts have approved this method of notice." *Id.* (citing *Johnson v. Am. Airlines, Inc.*, 531 F. Supp. 957, 961 (N.D. Tex. 1982) (finding notice reasonable when communicated by "direct mail, posting on company bulletin boards at flight bases and publishing the notice"), and *Lantz v. B-1202 Corp.*, 429 F. Supp. 421, 424 (E.D. Mich. 1977)); *see also Soler v. G&U, Inc.*, 86 F.R.D. 524, 531 (S.D.N.Y. 1980) (authorizing posting of notice in addition to individualized mailing); *Frank v. Capital Cities Communications, Inc.*, 88 F.R.D. 674, 679 (S.D.N.Y. 1981) (ADEA) (granting conditional certification and ordering individual mailed notice and "the posting of copies of [the notice on] public bulletin boards at [defendant's] offices").  Here, Plaintiffs propose posting of notice in the workers' workplaces.  This will improve the effectiveness of the notice both by allowing class members to see it multiple times and by emphasizing its

legitimacy, since it will be presented in an official, authoritative context. Notice could be posted along with multiple copies of the Consent to Join form, which the workers could take, fill out, and send to their counsel. Schaus' and Lingle's public compliance with the Court's notice order will also make apparent its commitment to abiding by the FLSA's fair pay requirements.

## CONCLUSION

For the reasons set forth above, Plaintiffs respectfully request that the Court grant their Motion, thereby certifying this as a representative collection action; authorize dissemination of Notice to the prospective collective action class by mail and posting; approve the proposed forms of Notice and Consent to Join form; order Trevor Schaus and Brenda Lingle to promptly produce the names, addresses, telephone numbers of all former Monster workers; and equitably toll the statute of limitations for all workers from August 4, 2011 through the time period of 120 days after notice is mailed.


RESPECTFULLY SUBMITTED this 6th of June, 2012



By_____/s/_____

        Rachel Wilson
        Attorney for Plaintiffs

1

## <u>CERTIFICATE OF SERVICE</u>

2

I hereby certify that on the 6th day of June, 2012, I electronically transmitted the attached
document to the Clerk's Office using the CM/ECF system for filing and transmittal to the
following CM/ECF registrants:

3

4

5

Eric Dobberstein
8965 S. Eastern Ave., Suite 280
Las Vegas, NV  89123
Attorney for Defendants Schaus and Lingle

6

7

8

9

/s/_____
Rachel Wilson

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28