1

2

3

4

5

6                           UNITED STATES DISTRICT COURT

7                                   DISTRICT OF NEVADA

8                                            * * *
                                              )
9    ANTONIO LAGOS, ARTURO CARREÑO,            )
     ROSA RODRIGUEZ, and LUPE URIBE,           )
10                                             )
                Plaintiffs,                    )        2:11-CV-00331-LRH-GWF
11                                             )
        v.                                     )
12                                             )
     MONSTER PAINTING, INC.; TREVOR            )        ORDER
13   PHILLIP SCHAUS; and BRENDA LINGLE,        )
                                               )
14              Defendants.                    )
     _____       )

15

16          Before the Court is Plaintiffs Antonio Lagos ("Lagos"), Arturo Carreño ("Carreño"), Rosa

17   Rodriguez ("Rodriguez"), and Maria Guadalupe Uribe Diaz's (a.k.a. Lupe Uribe) ("Uribe") Motion

18   for Default Judgment against individual Defendants Trevor Phillip Schaus ("Schaus") and Brenda

19   Lingle ("Lingle").  Doc. #84.[1]

20   **I.      Facts and Procedural History**

21          This is a putative class action originally brought by two former employees of Monster

22   Painting, Inc., Lagos and Carreño, involving allegations of unlawful and fraudulent activities in the

23   payment and reporting of wages and overtime.  Defendants are Monster Painting, Inc., owner and

24   officer Schaus, and manager Lingle.  All proceedings against Monster Painting, Inc. have been

25   stayed pending resolution of its petition for bankruptcy.  Doc. #29.

26
     _____
          [1] Refers to the Court's docket number.

1    Plaintiffs Lagos and Carreño filed their initial Complaint on March 2, 2011.  Doc. #1.  On

2  April 7, 2011, Plaintiffs filed a First Amended Complaint (Doc. #9) as of right and in response to

3  Defendants' first Motion to Dismiss (Doc. #8).  Following the Court's Order (Doc. #34) dismissing

4  most of the claims in Plaintiffs' First Amended Complaint, the Court granted Plaintiffs another

5  opportunity to amend their Complaint.  Doc. #62.  Plaintiffs filed a Second Amended Complaint on

6  May 7, 2012.  Doc. #48.  Defendants answered the Second Amended Complaint on May 23, 2012.

7  Doc. #50.  On December 7, 2012, Plaintiffs requested an amendment to the Scheduling Order in

8  order to file a third motion to amend their complaint.  Doc. #75.  The Magistrate Judge granted the

9  amendment to the Scheduling Order, noting that Plaintiffs had established good cause.  Doc. #77.

10    After the Court granted Plaintiffs leave to amend a third time, Plaintiffs filed a Third

11  Amended Complaint, which added two named Plaintiffs, Rodriguez and Gonzalo Sierra Garcia

12  ("Garcia"), but otherwise left the Second Amended Complaint unaltered.  Doc. #80.  Plaintiffs

13  assert claims for violations of the Fair Labor Standards Act ("FLSA") and the Racketeer Influenced

14  and Corrupt Organizations Act ("RICO").  Plaintiffs allege they were not paid for every hour they

15  worked and were not paid an overtime premium of time-and-a-half for hours worked in excess of

16  forty hours per week.  Plaintiffs further allege that Defendants engaged in a fraudulent scheme in

17  which Defendants paid wages sometimes with payroll checks through a third-party processor and

18  other times with personal checks, but then issued W-2 forms that reported only the income and

19  withholdings from the payroll checks, and not the income and withholdings from the personal

20  checks.  Finally, Plaintiff Carreño alleges that he was terminated in retaliation for complaining

21  about the alleged illegal pay practices.

22    Plaintiffs served Defendants Schaus and Lingle with the Third Amended Complaint on

23  April 22, 2013 via mail at their last known address.  Doc. #81.  To date, Defendants Schaus and

24  Lingle have failed to respond to or defend in any way against the Third Amended Complaint.

25  Plaintiffs filed for Clerk's Entry of Default, which was entered on May 22, 2013.  Doc. #83.

26  Thereafter, Plaintiffs filed the present Motion for Default Judgment.  Doc. #84.

1    II.    **Legal Standard**

2        Obtaining a default judgment is a two-step process governed by Federal Rule of Civil

3    Procedure 55. *Eitel v. McCool*, 782 F.2d 1470, 1471 (9th Cir. 1986). First, Rule 55(a) provides,

4    "[w]hen a party against whom a judgment for affirmative relief is sought has failed to plead or

5    otherwise defend, and that failure is shown by affidavit or otherwise, the clerk must enter the

6    party's default." Second, after the clerk enters default, a party must seek entry of default judgment

7    under Rule 55(b). Nonetheless, while entry of default by the clerk is a prerequisite to an entry of

8    default judgment, "a plaintiff who obtains an entry of default is not entitled to default judgment as a

9    matter of right." *Warner Bros. Entm't Inc. v. Caridi*, 346 F. Supp. 2d 1068, 1071 (C.D. Cal. 2004)

10   (citation omitted). Rather, granting or denying relief is entirely within the Court's discretion. *Id.*

11   (citations omitted). The Ninth Circuit has identified seven relevant factors in determining whether

12   to grant default judgment including: (1) the possibility of prejudice to the plaintiff; (2) the merits of

13   the plaintiff's substantive claims; (3) the sufficiency of the complaint; (4) the sum of money at

14   stake in the action; (5) the possibility of a dispute concerning material facts; (6) whether the default

15   was due to the excusable neglect; and (7) the strong policy favoring decisions on the merits. *Eitel*,

16   782 F.2d at 1471-72.

17       The Court takes the well-pleaded factual allegations in the non-defaulting party's complaint

18   as true, except as to the amount of damages. *Televideo Sys., Inc. V. Heidenthal*, 862 F.2d 915, 917-

19   18 (9th Cir. 1987). Where damages are not readily ascertainable from the record, the Court may

20   conduct a hearing on the issue of damages before entering default judgment. *Geddes v. United Fin.*

21   *Grp.*, 559 F.2d 557, 560 (9th Cir. 1977). Finally, "[a] default judgment must not differ in kind

22   from, or exceed in amount, what is demanded in the pleadings." Fed. R. Civ. P. 54(c).

23   III.   **Discussion**

24       A.    **Lagos and Carreño**

25       The Court has reviewed the documents and pleadings on file in this matter and finds that the

26   *Eitel* factors support default judgment in favor of Lagos and Carreño (together "Plaintiffs").

1    First, to the extent that Plaintiffs seek recovery of earned but unpaid wages, the Court finds

2    that they will be prejudiced if default judgment is not granted because it is unlikely that they will

3    have other recourse.

4    As to the merits of their substantive claims and the sufficiency of the complaint, the Ninth

5    Circuit requires that a plaintiff's allegations "state a claim on which the [plaintiff] may recover."

6    *Danning v. Lavine*, 572 F.2d 1386, 1388 (9th Cir. 1978); *see also Alan Neuman Prods., Inc. v.*

7    *Albright*, 862 F.2d 1388, 1392 (9th Cir. 1988) (claims not well-pleaded cannot support a default

8    judgment). Although well-pleaded allegations in the complaint are admitted by defendant's failure

9    to respond, "necessary facts *not* contained in the pleadings, and claims which are *legally*

10   *insufficient*, are *not* established by default." *Cripps v. Life Ins. Co. of Am.*, 980 F.2d 1261, 1267

11   (9th Cir. 1992). As such, the Court finds that default judgment shall be limited to those well-

12   pleaded claims set forth in Plaintiff's Third Amended Complaint.

13   FLSA

14   Subject to certain exceptions, the FLSA generally requires employers to pay overtime

15   compensation to employees working more than forty hours per week "at a rate not less than one and

16   one-half times the regular rate at which he is employed." 29 U.S.C. § 207(a). As the Court

17   previously found in its December 29, 2011 Order dismissing all but one of Plaintiffs' FLSA claims,

18   Plaintiffs' conclusory allegations that "they, and other current and former employees of Monster

19   Painting, regularly worked more than forty hours per week but were not paid the required overtime

20   premium . . . are not entitled to a presumption of truth and are insufficient to state a plausible claim

21   for relief under the FLSA." Doc. #34, p. 4 (citing *Zhong v. August August Corp.*, 498 F. Supp. 2d

22   625, 630 (S.D.N.Y. 2007)). Only where Plaintiffs have made specific factual allegations as to

23   Defendants' failure to pay wages and overtime premiums are their claims legally sufficient and thus

24   established by default. Specifically, Plaintiffs have made adequate factual allegations only as to

25   Defendants' failure to pay wages and overtime premiums to Carreño for a total of 51 weeks

26   between September 7, 2009 and January 30, 2011 (Doc. #80, p. 2-6), and Lagos for a total of three

4

1   weeks between June 7, 2010 and July 25, 2010 (Doc. #80, p. 7).  In all other respects, however,

2   Plaintiffs' FLSA claims are legally insufficient and thus not established by default.  *See Neuman*,

3   862 F.2d at 1393 (failure to allege a valid claim is *not* cured by evidence presented at the default

4   "prove-up" hearing).

5            RICO

6            The Court finds that Plaintiffs have alleged a pattern of racketeering activity sufficient to

7   establish a civil RICO claim under 18 U.S.C. § 1964(c) by detailing no fewer than six predicate

8   acts of mail and wire fraud and one predicate act of money laundering.  *See* Doc. #80, p. 12-17; *see*

9   *Ove v. Gwinn*, 264 F.3d 817, 825 (9th Cir. 2001) (requiring that a plaintiff plead sufficient facts to

10  show that the defendant harmed his business or property through predicate acts of racketeering that

11  were part of a larger pattern of racketeering activity).  Furthermore, the Court finds that Plaintiffs'

12  RICO claim satisfies the heightened pleading standard applicable to claims of fraud under F.R.C.P.

13  9(b).  *See Moore v. Kayport Package Express, Inc.*, 885 F.2d 531, 541 (9th Cir. 1989) (racketeering

14  allegations under section 1962(c) must identify the time, place, and manner of each fraud plus the

15  role of each defendant in the scheme).

16           Retaliation

17           The FLSA anti-retaliation provision provides that it is unlawful "to discharge or in any

18  other manner discriminate against any employee because such employee has filed any complaint."

19  29 U.S.C. § 215(a)(3).  "[S]o long as an employee communicates the substance of his allegations to

20  the employer (e.g., that the employer has failed to pay adequate overtime, or has failed to pay the

21  minimum wage), he is protected by § 215(a)(3)."  *Lambert v. Ackerley*, 180 F.3d 997, 1008 (9th

22  Cir. 1999).  The Court finds that Carreño has sufficiently alleged a claim for retaliation.  Doc. #80,

23  p. 2, 7, 8, 19.

24           In sum, the Court finds that Plaintiffs' Third Amended Complaint properly alleges the

25  elements for the above referenced causes of action.  As such, the second and third *Eitel* factors

26  weigh strongly in favor of granting default judgment on those claims.

1  Fourth, the Court considers the amount of money involved in relation to the seriousness of

2  Defendants' conduct.  In this case, Plaintiffs seek compensation for unpaid wages and overtime,

3  plus liquidated damages under the FLSA and waiting-time penalties pursuant to Nevada Revised

4  Statutes sections 608.040(1) and 608.050.  Additionally, Plaintiffs seek treble damages for RICO

5  violations.  Lastly, Carreño seeks compensatory damages for retaliatory conduct under the FLSA.

6  The Court finds that the total damages sought, $72,591.08, are not excessive in light of the

7  seriousness of Plaintiffs' allegations.[2]

8  Fifth, as the Court discussed above, Plaintiffs have clearly alleged the facts necessary to

9  establish their claims under the FLSA and RICO.  Because well-pleaded allegations set forth in

10  Plaintiffs' Complaint are admitted by Defendants' failure to respond, the Court finds that there is

11  little room for dispute as to the material facts in this case.  Furthermore, Defendants had the

12  opportunity to contest the facts alleged in Plaintiffs' Third Amended Complaint and failed to do so.

13  Sixth, given Defendants' early and active participation in the matter, the possibility of

14  excusable neglect is remote.

15  Finally, while "[c]ases should be decided upon their merits whenever reasonably possible,"

16  *Eitel*, 782 F.2d at 1472, Defendants' failure to respond or in any way defend against Plaintiffs'

17  Third Amended Complaint makes a decision on the merits impractical.  Considering each of the

18  *Eitel* factors as they apply to the present circumstances, the Court concludes that default judgment

19  on those well-pleaded claims set forth in Plaintiffs' Third Amended Complaint is proper.

20  **B.    Rodriguez, Uribe, and Garcia**

21  As to Rodriguez, the Court finds that default judgement is not appropriate.  While

22  Rodriguez is named as a Plaintiff in the Third Amended Complaint, the body of the Complaint is

23  entirely devoid of any allegations entitling her to relief.  Plaintiffs' brief reference to a sworn

24  declaration detailing her alleged illegal treatment in their Motion for Default Judgment (Doc. #84,

25

26  [2] The Court notes that the $72,591.08 figure provided by Plaintiffs' in their Motion for Default Judgment does not reflect the actual damage award contemplated by the Court at this time.

6

1   Ex. A) is insufficient as a matter of law to support default judgment.  *See Nishimatsu Constr Co. v.*

2   *Hous. Nat'l Bank*, 515 F.2d 1200, 1206 (5th Cir. 1975) (where the complaint omits allegations

3   essential to recovery, a default judgment cannot stand); *Danning v. Lavine*, 572 F.2d 1386, 1388

4   (9th Cir. 1978) ("facts which are not established by the pleadings of the prevailing party, or claims

5   which are not well-pleaded, are not binding and cannot support the judgment"); *Neuman*, 862 F.2d

6   at 1393 (failure to allege a valid claim is not cured by evidence presented at default judgment).  For

7   the same reason, the Court finds that it is without authority to enter default judgment in favor of

8   Uribe.  While Uribe is named as a plaintiff in the present Motion for Default Judgment, she is not

9   named as a plaintiff in the Third Amended Complaint.  *See id.*  Furthermore, with regard to Garcia,

10  who is a named plaintiff in the Third Amended Complaint (Doc. #80), the Court declines to award

11  default judgment because she has not so moved.

12          Finally, the Court declines to afford relief to Rodriguez and Uribe as members of a putative

13  collective action or class.  Plaintiffs did not file a third motion to certify collective action under the

14  FLSA as directed by the Court in its February 23, 2013 Order granting leave to file a Third

15  Amended Complaint.  Doc. #79.  Nor did Plaintiffs file a motion for class certification pursuant to

16  Federal Rule of Civil Procedure ("F.R.C.P.") 23(a).  Only where the class has been properly

17  certified under F.R.C.P. 23 may a court adjudicate the rights of putative class members.  *See*

18  *Partington v. Am. Intern. Specialty Lines Ins. Co.*, 443 F.3d 334, 341-42 (4th Cir. 2006) (finding

19  that while "a default judgment has the effect of deeming all factual allegations in the complaint

20  admitted, it does not also have the effect of 'admitting' the independent legal question of class

21  certification") (citing *Davis v. Hutchins*, 321 F.3d 641, 648-49 (7th Cir. 2003)).

22  **IV.    Damages**

23          FLSA Unpaid Compensation and Liquidated Damages (Carreño & Lagos)

24          Pursuant to 29 U.S.C. § 216, "[a]ny employer who violates the provisions of section 206 or

25  section 207 of this title shall be liable to the employee or employees affected in the amount of their

26  unpaid minimum wages, or their unpaid overtime compensation, as the case may be, and in an

1  additional equal amount as liquidated damages."  While Counsel's calculations of Carreño and

2  Lagos' damages for unpaid compensation are sufficiently detailed, they account for a number  of

3  claims that were not properly pleaded in the Third Amended Complaint.[3]  *See Alan Neuman Prods.,*

4  *Inc. v. Albright*, 862 F.2d 1388, 1393 (1988) (failure to allege a valid claim is *not* cured by

5  evidence presented at the default "prove-up" hearing).  To clarify the issue of damages under the

6  FLSA, Counsel shall re-submit calculations reflecting only those damages that correspond to the

7  well-pleaded claims set forth in the Third Amended Complaint (i.e., only those claims on which

8  default judgment shall be granted).

9       Plaintiffs also argue that they are entitled to waiting-time penalties under Nevada Revised

10  Statutes 608.040(1) and 608.050.  Doc. #84, p. 21-22.  However, because they made no such

11  demand in their Third Amended Complaint, the Court finds that such relief is not warranted.  *See*

12  Fed. R. Civ. P. 54(c).  Furthermore, Plaintiffs would not be entitled to waiting-time penalties as

13  against Lingle even if their demand for relief had been proper.  *See Boucher v. Shaw*, 572 F.3d

14  1087, 1090 (9th Cir. 2009) (adopting the Nevada Supreme Court's holding that "individual

15  managers could not be found liable as 'employers' under Chapter 608").

16       RICO Treble Damages (Carreño & Lagos)

17       18 U.S.C. § 1964 provides that "[a]ny person injured in his business or his property by

18  reason of a violation of section 1962 of this chapter . . . shall recover threefold the damages he

19  sustains."  In order to calculate RICO damages, Counsel added up the deductions made from

20  Carreño and Lagos' personal paychecks (i.e., those deductions which were not reported on their

21  W-2s).  The total calculations reflect threefold the amount alleged to have been fraudulently

22

23       [3]  Counsel created a chart for each employee showing pay date, hours recorded on paycheck,

24  hours recorded by plaintiff, pay rate, check number, and check total.  Carreño was the only Plaintiff
to keep contemporaneous records.  As such, Counsel used Carreño's average unpaid wages and
overtime per week from his records to estimate damages owed to both Carreño and Lagos for an

25  additional 17 and 10 weeks, respectively, that were not alleged in the Third Amended Complaint.
Furthermore, the chart summarizing Lagos' unpaid wages and overtime conflicts with the facts alleged

26  in the Third Amended Complaint.  Doc. #84, Ex. C & D; Doc. #80, p. 7.

1  withheld from their paychecks. Accordingly, the Court accepts Counsel's RICO treble damages

2  calculation.

3          FLSA Retaliation (Carreño)

4          "Any employer who violates the provisions of section 215(a)(3) of this title shall be liable

5  for such legal or equitable relief as may be appropriate to effectuate the purposes of section

6  215(a)(3) of this title, including without limitation employment, reinstatement, promotion, and the

7  payment of wages lost and an additional equal amount as liquidated damages." 29 U.S.C. § 216(b).

8  Carreño requests $10,000 in compensatory damages for emotional distress. The Court finds that

9  $10,000 is warranted in light of Defendants' alleged retaliatory conduct and their failure to defend

10 this action. *See Lambert v. Ackerly*, 180 F.3d 997, 1011 (9th Cir. 1999) (finding that an award of

11 $75,000 for emotional distress to each of six employees who were terminated in retaliation for

12 protected conduct under the FLSA was not excessive).

13 **V.     Attorney's Fees and Costs**

14         As the prevailing parties on their FLSA and RICO claims, Carreño and Lagos are entitled to

15 an award of reasonable attorney's fees and costs of the action. 29 U.S.C. § 216(b); 18 U.S.C. §

16 1964(c). Under the FLSA, attorney's fees may be calculated according to the "lodestar" method,

17 whereby the reasonable number of hours expended on *successful claims* is multiplied by the

18 attorney's hourly fee based on the prevailing market rate. *See Ulin v. Lovell's Antique Gallery*, No.

19 11-17698, 2013 WL 2996547, at *2 (9th Cir. 2013) (lodestar method applies to award of fees under

20 FLSA). The lodestar calculation, however, does not end the inquiry. *Hensley v. Eckerhart*, 461

21 U.S. 424, 434 (1983). Attorney's fees to be compensated in an award must be "reasonable in

22 relation to the success achieved." *McGinnis v. Kentucky Fried Chicken of Cal.*, 51 F.3d 805, 810

23 (9th Cir. 1994) (quoting *Hensley*, 461 U.S. at 436). The results obtained is "particularly crucial

24 where a plaintiff is deemed 'prevailing' even though he succeeded on only some of his claims for

25 relief." *Id.*

26 ///

Plaintiffs seek reimbursement of the costs of this action in the total amount of $557.90, reflecting $350.00 in filing fees and $270.90 in additional itemized expenses. Doc. #84, p. 28. Pursuant to Counsel's lodestar calculation, Plaintiffs' seek reimbursement of $37,350.00 in attorney's fees for Rachel Wilson, $5,670.00 in legal assistant fees for Katherine Daubert, and $1,835.00 in legal assistant fees for Blaine Jordan. Doc. #84, p. 29-30, Ex. E. In support of their request, Counsel has complied with the applicable provisions of Local Rule 54-16 by providing an itemization and description of the work performed as well as a summary of the time and labor required to pursue this action; the novelty and difficulty of the questions involved; the skill requisite to perform the legal service properly; the customary fee; her own experience, reputation, and ability; and awards in similar cases. *See id.*

Here, however, the Court finds Counsel's $45,412.90 lodestar calculation to be somewhat excessive relative to what Counsel won for their clients. As such, the Court "must reduce the attorneys fees award so that it is commensurate with the extent of the plaintiff's success." *McGinnis*, 51 F.3d at 810; *see also Hensley*, 461 U.S. at 436-37 ("[t]he district court may attempt to identify specific hours that should be eliminated, or it may simply reduce the award to account for the limited success"). In the Court's estimation, the reason every Plaintiff, including Rodriguez and Uribe, will not recover the full amount requested is because Counsel made two significant mistakes. First, Counsel neglected to include specific allegations sufficient to state a claim under the FLSA for each Plaintiff's unpaid wages and overtime in the Third Amended Complaint. Second, Counsel neglected to file a third motion to certify collective action, such that relief would be available via that avenue at this stage in the proceedings. Nevertheless, because Counsel's time appears to have been devoted to the litigation as a whole, the Court finds it difficult to divide the hours expended on a claim-by-claim basis. *See Hensley*, 461 U.S. at 435 ("[s]uch a lawsuit cannot be viewed as a series of discrete claims"). Despite the inclusion of Rodriguez and Uribe in damages calculations, the majority of Counsel's time appears to have been spent on Carreño and Lagos' FLSA and RICO claims. As such, the Court finds that a reduction of 25% is appropriate to

10

reflect the fact that only Carreño and Lagos are prevailing parties entitled to attorney's fees. *See Int'l Brotherhood of Carpenters and Joiners of Am. AFL-CIO, Local Union No. 217 v. G.E. Chen Constr. Inc.*, 136 Fed. Appx. 36, 39 (9th Cir. 2005) (affirming the district court's decision to reduce the fee requested by 67% where it "carefully considered the interrelationship between the successful and unsuccessful claims" and "expressly and reasonably applied all the factors required by the Supreme Court in *Hensley v. Eckerhart*").  In the alternative, the Court invites Counsel to recalculate attorney's fees based on the aforementioned considerations.

IT IS THEREFORE ORDERED that Plaintiffs' Motion for Default Judgment (Doc. #84) is GRANTED in part and DENIED in part in accordance with the Court's findings as set forth herein.

IT IS FURTHER ORDERED that Plaintiffs Lagos and Carreño shall have ten (10) days after entry of this Order to resubmit FLSA damages calculations reflecting only those damages that correspond to the well-pleaded claims set forth in the Third Amended Complaint.

IT IS FURTHER ORDERED that Plaintiffs Lagos and Carreño shall have ten (10) days after entry of this Order to prepare an appropriate proposed judgment against Defendants Schaus and Lingle, and submit the same for approval and signature by the Court.

IT IS SO ORDERED.

DATED this 4th day of November, 2013.

_____
LARRY R. HICKS
UNITED STATES DISTRICT JUDGE